The third case, the United States v. De La Cruz. Mr. Hillis. May it please the court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office for the Central District of Illinois. And I represent Mr. De La Cruz, who raises a single issue on the appeal. And this appeal stands in the intersection of 5G 1.3B and 5K 2.23. And the purpose of the intersection is to give my client a path home from prison two years sooner than the district court has presently allowed through the imposition of a 210 month sentence. At the crux of this, my client is convicted of a racketeering offense. And under the guidelines, that offense should have been credited. Because the offense spanned 1999 to July of 2016. So in the relevant conduct, there is then the 2009 aggravated unlawful use of a weapon conviction. He received no criminal history for that, but that's not relevant. And the government makes the argument that it should count for criminal history. We don't dispute that. But the problem is that the guidelines require consideration under 5G 1.3B and then through the commentary 5K 2.23 to account for the fact. The guidelines don't require that. 5K 2.23 is departure analysis. Absolutely. It's a may, not a shall. No doubt. Totally obsolete after Booker. The judge can address it or not as she sees fit. The case law says that the logic of the departure provisions is still relevant to the analysis. 5G 1.3 has the mandatory language. And then through the commentary and, of course, the language of 5K 2.23. The mandatory language of 5G 1.3 applies to undischarged sentences. The 2009 sentence was discharged. That's correct. So 5K 2.23 permits the judge to account for it but does not require anything. So it's still a principal argument that was made that should be accounted for under 3553A. We pointed to the guideline provisions, both the mandatory language of 5G 1.3B and the now obsolete but nevertheless relevant analytical proposition of 5K 2.23, to show that under a proper procedural analysis for the imposition of sentence, the judge should have accounted for the fully discharged sentence. And she did not. She accounted for a different sentence in state court in the closing remarks of the sentence. But the defense argued, and I believe it's at appendix pages 31 through 34, that the court should also consider the AUW time, the two years. And the judge never did. So she should have.  Remind us, what was the clearest request to the judge to use 5K 2.23? There was nothing that explicitly referenced 5G 1.3B or 5K 2.23. However, as this court's noted in opinions, judges are presumed to know the law. The guidelines are there for anybody to read and to consider. That would seem to suggest that we should reverse freely with new arguments raised on appeal for departure requests that were never made. There was a request, Judge. There wasn't a specific reference to the guideline provisions, but there is clearly a request that is made. I understand that, but it's not tied to anything in the guidelines. Is it? No, not specifically when that argument was made, as I recall. But nevertheless, it put the issue before the court. The court has an obligation under sentencing guidelines to correctly calculate the sentence. This is an argument that fits within the provisions I've mentioned. Okay. I'm skeptical, but okay. Skeptical that the court would have the obligation to address the facts of the argument in proper procedural position of the sentence? To address an argument that was not made. Well, again, and I don't want to slice it too finely, Judge. I'm well aware of what you're getting at. But the argument was made. The specific provisions were not cited to the district court. That's true. And we agree that by its terms, 5G 1.3b does not apply to this conviction for aggravated unlawful use of a weapon. Right. But the two provisions that I mentioned are interrelated. And so 5G 1.3b and 5K 2.23 discuss different things that are related concept. The ultimate effort, of course, is to make sure that people who are getting convicted are not serving more time in prison through artful prosecutions where you've served your time on the substantive offense, and then it's also accounting for criminal history and then not being included as relevant conduct. Well, it's a special rule for racketeering. And I've got to say, there is some irony here about arguing that this is mitigating at all, in the sense that the argument that the defendant was convicted here of participating in a 17-year-long course of racketeering activity is a fairly senior leader of the Latin Kings gang, including conspiracy to murder. And the argument seems to be that it's a mitigating factor that he was arrested, convicted, and imprisoned during the course of that racketeering activity and then returned to it again, right? But the essential thing would be that you could get criminal history for the AUW conviction. It could be considered as part of the guideline calculations. And furthermore, to say it's mitigation, I wouldn't want to forget the fact that that's an invalid statute now. My client did two years on an invalid statute to serve that time. That is further mitigation to suggest that this all should have been taken into consideration by the district court. What was invalid about it? Remind me. In Burns as well as in Aguilar, the Illinois Supreme Court invalidated the AUW as recognized in this court's decisions in Jenkins and Gill. So it's not just that he shouldn't receive the three criminal history reports. This was a drive-by shooting, right? Those were the facts. So it was undercharged. Seriously undercharged. I couldn't say. Because the statute, it was invalidated. It's just got a gun in your pocket. Sure, but then the penalties may have been much less and the sentence could have been much less. So it is still mitigating, Your Honor. What was the sentence? Less than a year, right? Two years. Two years. I'm sorry. Two years. But he didn't get any criminal history points. It was dropped in the guidelines calculation. So it didn't factor into the guidelines calculation at all. So he wasn't... But the point is it should. Why did it not? In terms of the overall imposition of the sentence. Not in terms of the range, but rather in terms of giving the procedural effect under the guidelines. Right, but it didn't elevate his range. So it just was a wash. I still don't see how it can be a wash to do two years that are relevant conduct and not count them towards the overall imposition of sentence if we were to correctly apply the guidelines in this case to account for the fact that he did time under an invalid statute for time that is relevant. There's no doubt. The government has not argued even that it's not relevant conduct. It is. So relevant conduct has to be properly considered. And I pointed to the guideline provisions that are central in that analysis. And this is de novo review, I believe, for the correct imposition of the guidelines and the calculations to ensure that they're done correctly so that we don't have people serving more time in prison than they should for stuff that they've already been accounted for by way of relevant conduct in the imposition of sentence. Want to save some time? I would. Thank you, Your Honor. Thank you, Mr. Hillis. Ms. Bonamici. May it please the Court, good morning. Your Honors, the district court properly considered defendant's request for a reduction in his sentence based on the amount of time that he had spent on both the discharge portions of state sentences as well as to take into account the time that remained on one of his state sentences. And the court did that by sentencing the defendant to the low end of the guidelines and ordering that the sentence be served concurrently with the remaining portion of his ongoing state sentence, despite the fact that the defendant's crime here was obviously at the highest level of seriousness. The government agrees that there is some irony here in asking for a reduction for time spent on, for a relatively minor amount of time spent given the nature of the defendant's real conduct  The defendant was a member for an extended period of time. He rose through the ranks to a very high level of rank. He participated in the gang's violent activities, including participating in shootings and beatings. He really, he was at the top of the line here. And the guidelines do specifically provide a special set of rules for racketeering counts, precisely because it's been determined that it is not appropriate that the defendant's conduct as part of a racketeering conspiracy be discounted based on the fact that it has previously produced state convictions. In fact, there's a very good argument to be made that that should result in an increase in the defendant's state sentence because obviously smaller sentences have done nothing to dissuade him from continuing his unlawful conduct and his membership in the gang. The district court here did, in fact, specifically expressly discuss the defendant's argument for reduction of sentence, expressed a sensitivity to the fact that the defendant had spent a significant amount of time in prison already. Wasn't that discussion, though, counsel, focused on a different conviction? And I didn't see any point where the district judge specifically addressed this particular conviction. I agree that the district court did not distinguish the convictions or talk about it. What the district court did was take as a whole this concept of the defendant having spent a significant amount of time in jail and considering the issue, which was the primary issue that was raised here, which was it should be in fairness. The defendant argued again and again it's only fair that the defendant receive a discount based on these state sentences. And the district court treated that argument as a general fairness issue, taking into account the fact that he had spent substantial time on state sentences. That is sufficient to establish that the district court took into account the defendant's argument, particularly since what was stressed there was a general notion of fairness and, in fact, acted on that and granted a reduction in the sentence over the government's objection. It's simply the case that the court decided that a reduction in the full amount requested by the defendant was not appropriate. So what we have here is really an argument that relates to the degree to which the court took into account the defendant's request for a reduction rather than the fact of consideration. Did he do two years or 245 days on the 2009 conviction? There were references to both in the record. There were, and I'm not sure, and I've been operating under the assumption that it was two years. But as Your Honor points out, with respect to that conviction, it was very seriously under charge given the nature of the fact. So, I mean, the whole idea of it is, you know, not, and you know that I'm sure that the Aguilar decision has to do with the constitutionality of the offense based on Second Amendment concerns, not concerns that relate to the specific conduct involved in the defendant's case here. The guidelines provide that where a conviction has been invalidated later, you do not receive criminal history points for that conviction. And that guideline was properly followed here, as were all of the federal guidelines. So that's why there were no points here? That's why. Okay, thank you. So for all of these reasons, and the reasons stated in our brief, the government requests that this court affirm the defendant's conviction and sentence in this case. Thank you, Ms. Bonamici. Mr. Hillis? Judge Hamilton, to your question about whether the AUW offense was considered, page 48 of the appendix says the district court is taking into consideration another offense singular. She did not take into consideration both offenses. That's very clear from the record. Okay, can you clarify the two years, 245 days discrepancy? Not easily, Judge, because my recollection of the record was two years until Your Honor mentioned 245. I was feeling fairly certain on the two years, but I can address it in the 28J letter if it's not clear from the PSR, but my recollection is not beyond that, I'm afraid. I will say this, though, that there is a special set of rules that applies to criminal history, as the government said, but that's only to criminal history. It is not applicable to relevant conduct under 5G1.3B and 5K2.23. That's the essential issue in this case. We don't dispute that he could get criminal history. He didn't. The important thing is under relevant conduct provisions, should he be credited with the fully discharged term of imprisonment, and as I said on page 48 of the appendix, it was not considered, it was not taken into account, and whether it's 245 days or two years, I point this court to United States v. Richie Dean Pennington, where this court explained that even one day in prison where you shouldn't be there is too much. Right, but that's a must-not-may situation. We're still within the discretionary zone here, and so your argument is basically the judge just overlooked this 2009 conviction, not that she had to give credit for it. Right. I take your point, Your Honor, but those two provisions are tightly woven together, and still analytically the obsolete departure provisions nevertheless are supposed to inform the imposition sentence, and we've had this in other cases, and I could cite authority to the court subsequent to the argument in a 28J letter where the district courts have relied on this, this court's affirmed based on the analytical provisions that are nevertheless relevant to the analysis, which for the proper imposition sentence as a procedural matter, we reviewed de novo, this man is doing two years, maybe 245 days, whatever the amount, additional in prison for a time that was never considered by the district court, as is clear from page 48 of the appendix, so we ask that this court remand for resentencing so all of this can be properly considered. Thank you. Thank you, Mr. Hillis. Ms. Bonamici, thank you. We'll proceed to the fourth.